**JONES & LAUGHLIN STEEL, INC., Appellant,**

**v.**

**MON RIVER TOWING, INC. and United States of America, Appellees.**

**No. 84–3769.**

United States Court of Appeals, Third Circuit.

Argued June 19, 1985.

Decided Sept. 20, 1985.

Robert W. Murdoch (argued), Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., for appellant.

Dennis A. Watson, Grogan, Graffam, McGinley, Solomon and Lucchino, Pittsburgh, Pa., for Mon River Towing, Inc.

J. Alan Johnson, U.S.Atty., W.D. of Pa., Pittsburgh, Pa., Richard K. Willard, Acting Asst. Atty. Gen., R. Scott Blaze (argued),

Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for the U.S. of America.

Before ALDISERT, Chief Judge, GIB-BONS, Circuit Judge, and BECHTLE, District Judge.*

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

■ This appeal presents an issue of first impression for the Third Circuit: Whether in an admiralty suit against the United States under the Suits in Admiralty Act, service of process, timely within Rule 4 of the Federal Rules of Civil Procedure, is nevertheless untimely—and thus time-barred—because such service was not made on the local United States Attorney and the Attorney General "forthwith," as required by the Act. The district court concluded that service was untimely and dismissed the action for lack of subject matter jurisdiction. We reverse.

The Maxwell Lock and Dam, which is owned and operated by the Army Corps of Engineers, is situated on the Monongahela River in Fayette County, Pennsylvania. Jones and Laughlin Steel, Inc. (J & L), the appellant here, operates a preparation plant on the river that depends upon water transportation. On January 31, 1982, an empty barge owned by the Mon River Towing Company (Mon River) broke free, floated down the river, and lodged in an open gate at the dam. To facilitate release of the barge, the Corps of Engineers lowered the river's water level, an action that J & L alleges interrupted its steel production and thereby caused it damage.

J & L notified the Corps of Engineers of its losses, and the Corps acknowledged the claim by mailing to J & L Standard Recovery Form 95. J & L completed and filed the form in a timely fashion. When the Corps did not agree to make payment, J & L, in order to comply with the applicable statute of limitations, filed a complaint

against Mon River and the United States in the Federal District Court for the Western District of Pennsylvania on January 18, 1984. Jurisdiction was predicated on the general admiralty jurisdiction statute, 28 U.S.C. § 1333 (1982), on the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 (1982), and on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1982).

A copy of the summons and complaint was served on Mon River on January 24, 1984, and by certified mail on the Corps of Engineers in Pittsburgh, Pennsylvania on January 19, 1984. The summons and complaint thus were served upon the United States agency having primary responsibility for investigating the claim one day after J & L filed its complaint.

On March 15, 1984, J & L's counsel received from an Assistant United States Attorney a letter contending that the January 19 service was defective because J & L had failed to comply with Rule 4(d)(4), which, when read in conjunction with Rule 4(j), requires service of process upon the Attorney General and the appropriate United States Attorney within 120 days of the filing of a complaint in an action against the United States. The letter advised that if such service was not made within ten days the United States would move to dismiss the action against it. The letter evidenced a belief that Rule 4(d)(4) specified the proper mode of service.

Well within the ten days specified in the March 15, 1984 letter, and well within the 120 days specified in Rule 4(j), J & L effected service upon the Attorney General of the United States and upon the United States Attorney. These officers obviously had notice of the filing and of the substance of the complaint by March 15, 1984. Both were personally served with additional process no later than March 20, 1984.

The United States subsequently changed its position with respect to the applicability of Rule 4. Contending that the sole basis

* Hon. Louis C. Bechtle, United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

of subject matter jurisdiction in the suit against the United States was the Suits in Admiralty Act, the government moved for the district court to dismiss the suit against it. It argued that, because service of process had not been accomplished in the manner and within the time provided by the Act, the court lacked subject matter jurisdiction over the case. The government did not contend that it was in any way prejudiced by the fact that the Corps of Engineers, rather than the United States Attorney, was served on January 19, 1984.

The district court, relying on authorities in the Court of Appeals for the Second and Ninth Circuits, dismissed the complaint against the United States, as well as Mon River's cross-claim against the United States, for lack of subject matter jurisdiction. This appeal followed.[1]

## II.

Congress waived the federal government's sovereign immunity to certain admiralty suits when it enacted the Suits in Admiralty Act in 1920. *See* Suits in Admiralty Act, Pub.L. No. 156, 41 Stat. 525 (1920) (codified at 46 U.S.C. §§ 741–752 (1982)). Section 1 of the Act prohibited in rem actions against merchant vessels or cargoes of the United States. *See id.* § 1, 41 Stat. at 525 (codified at 46 U.S.C. § 741 (1982)). Section 2 provided that

in cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained ..., a libel in personam may be brought against the United States ...,

provided such vessel is employed as a merchant vessel or is a tug boat.

*Id.* § 2, 41 Stat. at 525–26 (codified at 46 U.S.C. § 742 (1982)).[2]

Plainly, Congress intended to put the United States, when operating merchant vessels, in the same position as were private owners. That is confirmed by section 3 of the Act, which provides that "[s]uch suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties." *Id.* § 3, 41 Stat. at 526 (codified at 46 U.S.C. § 743 (1982)).

Congress addressed service of process in the third and fourth sentences of section 2 of the Act. According to this portion of the Act,

The libelant shall forthwith serve a copy of his libel on the United States Attorney for such district and mail a copy thereof by registered mail to the Attorney General of the United States, and shall file a sworn return of such service and mailing. Such service and mailing shall constitute valid service on the United States.

*Id.* § 2, 41 Stat. at 526 (codified at 42 U.S.C. § 742 (1982)).[3]

Before addressing the significance of this language to this case a preliminary observation is in order. The district court asserted, and rather puzzlingly the parties to this appeal appear to agree, that the exclusive basis for tort claims sounding in admiralty is the Suits in Admiralty Act. Plainly that is not the case. When Congress enacted the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680 (1982), in 1946, it included jurisdiction over maritime torts com-

---

1. Both J & L and the United States contend that the order is appealable pursuant to 28 U.S.C. § 1291 (1982). However, since J & L's complaint against Mon River has not been disposed of, there is no final judgment as defined in Rule 54(b). But we have appellate jurisdiction under 28 U.S.C. § 1292(a)(3) (1982). *See Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 945 n. 1 (3d Cir.1985).

2. In 1960 Congress broadened the scope of this waiver by removing the restriction as to merchant vessels. *See* Act of Sept. 13, 1960, Pub.L.

No. 86–770, § 3, 74 Stat. 912, 912 (codified at 46 U.S.C. § 742 (1982)).

3. When in 1926 Congress enacted the Public Vessels Act, which waived sovereign immunity even with respect to public as well as merchant vessels, it simply provided that "[s]uch suits shall be subject to and proceed in accordance with the provisions of [the Suits in Admiralty Act]." Public Vessels Act, Pub.L. No. 546, § 2, 43 Stat. 1112, 1112 (1925) (codified at 42 U.S.C. § 782 (1982)).

mitted by the government, except for those torts for which a remedy was provided by either the Suits in Admiralty Act or the Public Vessels Act, 46 U.S.C. §§ 781–790 (1982). *See* Federal Tort Claims Act, Pub.L. No. 773, §§ 2674, 2680, 62 Stat. 869, 983, 984 (1948) (codified at 28 U.S.C. §§ 2674, 2680 (1982)). Because those acts waived the federal government's sovereign immunity to damages attributable only to its vessels, the FTCA, by waiving sovereign immunity for all other maritime torts, provided a cause for admiralty claims that did not involve vessels. The Supreme Court recognized this in *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), in which it held that an admiralty action was maintainable under the FTCA for damages caused by the government's negligence in permitting a lighthouse to go dark. *See id.* at 69, 76 S.Ct. at 126; *see also* H. Baer, Admiralty Law of the Supreme Court 727 (3d ed. 1979).

J & L does not allege that a vessel of the United States caused it damage. A dam is not a vessel. Thus, since neither the Suits in Admiralty Act nor the Public Vessels Act may provide a cause of action in this case, J & L may be able to recover under the FTCA. In its complaint J & L invoked the FTCA, and, unquestionably, service of process was timely under that act. This alone would seem to require reversal of the district court's dismissal of the complaint. Yet, because the parties, for reasons known only to them, have not addressed the applicability of the FTCA, prudence suggests that we address the merits of the district court's interpretation of the Suits in Admiralty Act.

In ruling that it lacked subject matter jurisdiction over J & L's action, the district court relied on a series of cases in the Second and Ninth Circuits, all of which woodenly followed *City of New York v. McAllister Brothers, Inc.*, 278 F.2d 708 (2d Cir.1960), a Second Circuit decision. In that case the court concluded that the service of process on the United States Attorney more than two months after the filing of a bill of libel, although such service was within the statute of limitations, was not service "forthwith" within the meaning of the Suits in Admiralty Act. It then held that the Act's requirement of forthwith service was jurisdictional and that the plaintiff's failure to comply with the requirement therefore deprived the district court of subject matter jurisdiction over the suit. *See id.* at 710.

The Second Circuit subsequently affirmed *McAllister* in *Battaglia v. United States*, 303 F.2d 683 (2d Cir.), *cert. denied*, 371 U.S. 907, 83 S.Ct. 210, 9 L.Ed.2d 168 (1962). In *Battaglia* Judge Friendly wrote a concurring opinion demonstrating that *McAllister's* conclusion that the Act's forthwith requirement was jurisdictional could not reflect the intent of Congress. He nonetheless concurred because he felt bound by circuit precedent, which had consistently accepted that conclusion. *See id.* at 686–87 (Friendly, J., concurring).

When the Ninth Circuit first discussed this issue, it noted Judge Friendly's criticism. *See Owens v. United States*, 541 F.2d 1386, 1388 (9th Cir.1976), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1580, 51 L.Ed.2d 792 (1977). But, in *Kenyon v. United States*, 676 F.2d 1229 (9th Cir.1981) (per curiam), the court adopted the *McAllister* interpretation of the Act, *see id.* at 1231 (describing compliance with the Act's forthwith requirement as "a condition precedent to the congressional waiver of the Government's sovereign immunity") and affirmed a district court's dismissal of a complaint in a case in which the plaintiff had served the Attorney General after the statute of limitation had run. Judge Boochever, like Judge Friendly, vigorously disputed the *McAllister* interpretation of the statute. However, he also felt bound by circuit precedent. *See id.* at 1231–32 (Boochever, J., concurring). Despite this criticism, the Ninth Circuit still follows *McAllister*, even in cases such as this, in which service on both the Attorney General and the United States Attorney is made within the statute of limitations but not "forthwith." *See, e.g., Amella v. United States*, 732 F.2d 711, 713 (9th Cir.1984).

 Unlike Judge Friendly and Judge Boochever, we are not bound by precedent on this issue. We conclude that the Act's requirement of forthwith service of process is not jurisdictional but rather is procedural.

In light of this conclusion, recent developments concerning the Federal Rules of Civil Procedure are relevant to disposition of this case. On February 28, 1966, the Supreme Court adopted rules that unified, generally speaking, admiralty procedure with the Federal Rules of Civil Procedure. *See* Amendments to Rules of Civil Procedure for the United States District Courts, *reported in* 383 U.S. 1029 (1966). Thus Rule 4(d)(4) now governs the method of service of process in admiralty actions, as well as service of process on the United States in all civil cases to which it is a party. Rule 4(j), a recent addition to the rule, *see* Act of Jan. 12, 1983, Pub.L. No. 97–462, § 2, 1982 U.S.Code Cong. & Ad. News (96 Stat.) 2527, 2528, requires that service of the summons and complaint be made "upon a defendant within 120 days after the filing of the complaint."

 This congressional enactment of a uniform 120-day period for accomplishing service of process must be read in light of 28 U.S.C. § 2072 (1982), which states that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Rule 4(j) therefore supersedes the Suits in Admiralty Act's requirement of forthwith service. *Cf.* C. Wright & A. Miller, Federal Practice and Procedure § 1106, at 412 (1969) ("Rule 4(d)(4) supersedes prior statutes providing for service in suits against the United States to the extent they are inconsistent with it."). As noted above, J & L effected service upon the appropriate United States Attorney and the Attorney General well within 120 days of the date on which it filed its complaint.

### III.

 The order dismissing J & L's complaint must be reversed. Rule 4 governs the service of process in this case. This is so for two independent reasons. First, J & L's complaint relies on the FTCA and states a claim for a maritime tort falling under that act. Rule 4 governs service on the United States in FTCA cases. Second, even if J & L has a cause of action under the Suits in Admiralty Act, the 1966 amendments to the Admiralty Rules and the recently adopted Rule 4(j) supersede the method of service of process specified in the Act. *See* 28 U.S.C. § 2072 (1982). In either case, J & L satisfied the requirements of Rule 4.

The judgment of the district court will be reversed.